**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**MICHELLE LEIGH MITCHELL,**

    **Plaintiff,**

**v.**                                                                                                                      **No. 19-cv-0717 SMV**

**ANDREW SAUL,**
**Commissioner of the Social Security Administration,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for an Immediate Award of Benefits or a Rehearing with Supporting Memorandum [Doc. 24], filed on February 17, 2020.  The Commissioner responded on May 18, 2020.  [Doc. 28].  Plaintiff replied on June 1, 2020.  [Doc. 29].  The parties have consented to my entering final judgment in this case. [Doc. 15].  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge's ("ALJ") finding at step five is not supported by substantial evidence.  It is not necessary to pass on Plaintiff's other allegations of error because an immediate award of benefits is appropriate.  The Motion will be granted.  *See* 42 U.S.C. § 405(g).

### Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see* 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work" ("PRW"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her PRW, the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff alleges disability since 2011 due to multiple sclerosis ("MS") and mental health problems. She first applied for a period of disability, disability insurance benefits, and supplemental security income on June 22, 2012. Tr. 58, 234. She alleged a disability-onset date

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

of August 30, 2011.  Tr. 58, 759, 1445.  Her claims were denied initially and on reconsideration.  *See* Tr. 58.

Plaintiff had her first administrative hearing before ALJ John Rolph on August 4, 2014.  Tr. 76.  ALJ Rolph issued his unfavorable decision on September 23, 2014.  Tr. 58–70.  He found an RFC for no more than a limited range of sedentary, unskilled work, with ready access to the restroom, and other non-exertional limitations.  Tr. 63.  Based on that RFC, ALJ Rolph found that Plaintiff could not return to her PRW but could perform other work that existed in significant numbers in the national economy.  Tr. 68–70.

Plaintiff exhausted her administrative remedies and filed her first federal court appeal on February 25, 2015.  [Doc. 1] filed in *Mitchell v. Colvin*, No. 15-cv-0166 CG.  The Honorable Carmen Garza, now Chief United States Magistrate Judge, found that the ALJ had failed to properly weigh the medical opinions in the record.  Tr. Tr. 869.  She granted Plaintiff's motion and remanded the case for further proceedings on May 10, 2016.  Tr. 868–80.

Plaintiff had her second administrative hearing before ALJ Ann Farris on August 1, 2017.  Tr. 812–39.  Plaintiff requested to amend her application to reflect a closed period of time, beginning with the originally alleged onset date of August 31, 2011, through January 1, 2016, when plaintiff attempted to return to work.  Tr. 817, 986.  By the time of the second hearing in August of 2017, however, she had lost her job.  Tr. 817.  ALJ Farris granted her request and amended the application to a closed period.  Tr. 759.  ALJ Farris found an RFC for no more than a limited range of sedentary work with some additional non-exertional limitations.  Tr. 765.  ALJ

Farris found that Plaintiff could not return to her PRW but could do work that existed in significant numbers in the national economy. Tr. 771–73.

Plaintiff filed her second appeal in federal court on February 9, 2018. [Doc. 1] filed in *Mitchell v. Berryhill*, No. 18-cv-0136 KRS. The Honorable Kevin R. Sweazea, United States Magistrate Judge, found that the VE's testimony appeared to conflict with the Dictionary of Occupational Titles ("DOT") and the ALJ had failed to reconcile the apparent conflict. Tr. 1573–74. Judge Sweazea granted Plaintiff's motion and remanded the case for further proceedings on November 30, 2018. Tr. 1568–75.

Plaintiff had her third administrative hearing before ALJ Farris on March 29, 2019. Tr. 1445. ALJ Farris issued the third unfavorable decision on June 5, 2019. Tr. 1459. She found that Plaintiff met the insured status requirement through December 31, 2021. Tr. 1448. At step one, she found that Plaintiff had not engaged in substantial gainful activity during the relevant, closed period of time: from the alleged onset date, August 20, 2011, through January 1, 2016. *Id.* At step two, the ALJ found that Plaintiff suffered from severe MS, depression, and scoliosis. *Id.* She further found that Plaintiff's medically determinable impairments of "history of gallbladder disease, irritable bowel syndrome, urinary incontinence, obesity, and marijuana dependence" were not severe. Tr. 1449. At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 1449–50. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 1451–57. The ALJ found that during the relevant, closed time period, Plaintiff had:

> the [RFC] to perform less than a full range of sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a). She needed to be able to alternate between sitting and standing for brief periods

> approximately hourly; could occasionally climb, balance, and stoop; never kneel, crouch, or crawl; must avoid exposure to extreme heat; and required a cane at times when walking. [Plaintiff] was limited to simple work[-]related decisions with few workplace changes; occasional and superficial interactions with coworkers; limited interactions with supervisors; and no requirement to work at a production rate pace or perform tandem tasks.

Tr. 1451. At step four, the ALJ found that Plaintiff was unable to perform any PRW as a waitress. Tr. 1457. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 1457–58. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. Tr. 1457–59. Plaintiff filed this third appeal on August 6, 2019. [Doc. 1].

## Discussion

If a claimant meets her burden at steps one through four, showing that she cannot return to her PRW, the burden shifts to the Commissioner to show that, nevertheless, she can perform other work that exists in significant numbers. *Grogan*, 399 F.3d at 1261. There is no precise definition for "significant" in this context. Nor is there any threshold number to show significance. *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The regulations and caselaw, however, give us some guideposts.

First, numerical significance can be shown with *either* regional numbers *or* national numbers. 20 C.F.R. §§ 404.1566(a), 416.966(a). It is also clear that "it does not matter whether— (1) Work exists in the immediate area in which [the claimant] live[s]; (2) A specific job vacancy exists for [the claimant]; or (3) [The claimant] would be hired if [she] applied for work." *Id.*

However, "**[i]solated jobs** that exist only in **very limited numbers** in **relatively few locations outside of the region where [the claimant] live[s]** are not considered 'work which

exists in the national economy'.  We will not deny . . . disability benefits on the basis of the existence of these kinds of jobs."  §§ 404.1566(b), 416.966(b) (emphases added).

"This Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'"  *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  "[The] reluctance stems from [the circuit court's] belief that each case should be evaluated on its individual merits."  *Id.*  Several factors go into the proper evaluation of the issue:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).  The Tenth Circuit has also emphasized that "the decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Id.*

In *Trimiar*, the VE had testified that there were 650–900 jobs regionally.  *Id.*  (No national numbers were provided.  *See id.*)  The ALJ considered several factors relevant to evaluating whether those jobs numbers were numerically significant.  *Id.*

> First, the ALJ considered the combination of impairments possessed by the Appellant and acknowledged the "limited function of the right hand."  "The medical evidence establishes that the claimant is impaired as a result of radial nerve pulsey [sic] of the right arm"; nevertheless, "the claimant retains the residual function capacity to engage in work of a light nature not requiring use of his right upper extremity."  Further, we cannot question the reliability of the vocational expert's testimony.  The ALJ gave due consideration to the education and experience of the expert and probed regarding the expert's conclusion that Appellant could perform work that exists in significant numbers.

7

> Also, the ALJ considered the Appellant's capacity to travel to the assigned work, by receiving testimony regarding the Appellant's capacity to drive long distances. In response to a question regarding the claimant's ability to drive distances over 150 miles, the expert noted: "I don't think the fatigue of the, the [sic] arm would be a terribly big problem. I think he'd get the use of that. A lot of this driving-- You know, if you're on the highway, for example, there's not much that demand placed on it." The record, therefore, reflects neither physical nor practical limits on the Appellant's ability to travel long distances. Additionally, the transcript indicates questioning regarding the isolated nature of the work. To this end, the ALJ heard testimony regarding the number of jobs, the percentage of jobs, and the location of jobs that are within the Appellant's capacity. Finally, we are satisfied that the ALJ properly considered the type and the availability of work. Testimony was elicited regarding what jobs the Appellant could perform; whether his skills were transferable to these jobs; whether and to what extent he would require training for these jobs; and whether other people with similar physical limitations performed these jobs.

*Id.* at 1330–32 (alterations in original). Ultimately, the Tenth Circuit found that it "need not strain **at the numbers** [because] the record indicate[d] that the ALJ weighed the relevant factors in reaching his conclusion." *Id.* at 1332 (emphasis added). The ALJ's finding that the regional numbers were "significant," therefore, was supported by substantial evidence. *Id.*

In the only two other cases published since *Trimiar* on the issue of "significance," it is evident that where the jobs numbers are low, a finding of "significant" must be supported by some type of analysis. For example, in *Allen v. Barnhart*, the Tenth Circuit reversed an ALJ's denial of benefits where the ALJ incorrectly relied on the medical-vocational guidelines ("grids"), which were not controlling because the plaintiff had several non-exertional limitations, and where two of the three jobs provided by the VE exceeded the limits of the plaintiff's RFC. 357 F.3d 1140, 1143 (10th Cir. 2004). The Commissioner urged the court to affirm anyway because, irrespective of the

errors, the VE had testified that the plaintiff could perform the duties of surveillance monitor, of which there were 100 jobs statewide. The court declined. *Id.* at 1144. The number of jobs was merely 100. The ALJ had not affirmatively determined that 100 jobs statewide was a "significant" number. And—as is relevant here—the ALJ had "not give[n] explicit consideration to the factors this court has recognized should guide the ALJ's commonsense judgment," such as the factors in *Trimiar*. *Allen*, 357 F.3d at 1144.

Similarly in *Raymond*, the Tenth Circuit repeated that where the step-five jobs numbers are low, a finding of numerical significance must be supported by some type of analysis, as in *Trimiar*. 621 F.3d at 1274 n.2. In *Raymond*, the court was not persuaded by the plaintiff's challenge to the jobs numbers at step five. 621 F.3d at 1274. The numbers at issue were 1.34 million jobs nationally and 385 regionally. *Id.* Critically, the plaintiff had not challenged the national numbers; he had challenged only the regional numbers. The court declined to remand because it was enough for the ALJ to rely on the national numbers, which the plaintiff never challenged. *Id.* Succinctly, the court clarified, "*Trimiar* does not hold that only regional jobs are relevant or that a court must engage in a factoral analysis when the number of jobs relevant available is, as here (1.34 million), much larger [than in *Trimiar*]." *Id.* at n.2.

In this case, during the most recent administrative hearing, the VE testified that a hypothetical individual with the same age, education, work experience, and RFC as Plaintiff could perform the jobs of addresser,[3] of which there are 5,700 jobs nationally; table worker,[4] of which there are 3,000 jobs nationally; and pneumatic tube operator,[5] of which there are 4,200 jobs

---

[3] DOT number 209.587-010
[4] DOT number 739.687-182
[5] DOT number 239.687-014

9

nationally. Tr. 1489. These total 12,900 jobs nationwide. On inquiry by the ALJ, the VE testified that these named jobs were "representative" of the other work that the hypothetical individual could perform, i.e., that there were additional jobs beyond those specifically identified. Tr. 1489–90. However, the VE went on to qualify her testimony about these unidentified additional jobs.

> VE:  There are more.
> ALJ:  Okay. I don't, I don't need more examples.
> VE:  Okay, not a lot because within the hypothetical, with those limitations and then not dealing with a lot of people, it eliminates some of the ones that would have higher numbers.
>
> ….
>
> Plaintiff's attorney:  Okay. With the table worker, did the sit/stand lower your numbers at all?
> VE:  No.
> Attorney:  Okay.
> VE:  Those are low in sedentary unskilled jobs anyway.
> Attorney:  Okay.
> VE:  Like some of the highest numbers, and I'm talking specifically regarding the DOT, not all areas of the country, you know, just require that, they'll say just give us the group or something like that, or pull out what you would say it is. With the software that I use, it gives the best approximation for the individual DOT and when you're talking unskilled, sedentary, they're going to be very low, that's just the way it is. Some of the higher numbers are like 21,000. We're not talking 500,000, you know, higher than that.

Tr. 1490, 1493–94. The ALJ explicitly relied on the VE's testimony to find that Plaintiff could perform other jobs that exist in "significant" numbers in the national economy. Tr. 1458. There is no indication that the ALJ relied on anything other than the VE's testimony to make this finding. Tr. 1458; *see* Tr. 1445–59.

Plaintiff's position is that the VE's testimony cannot amount to substantial evidence to support the finding that these jobs exist in "significant" numbers because the VE testified that the

10

numbers were "very low." Tr. 1494. The VE identified three jobs (by DOT number), totaling 12,900 jobs nationwide. Although the VE testified that there were more jobs than the three she specifically identified, she emphasized that there were "not a lot" more. Tr. 1490. She further testified, "[W]hen you're talking unskilled, sedentary, they're going to be very low, that's just the way it is. Some of the higher numbers are like 21,000. We're not talking 500,000, you know . . ." Tr. 1494.

Because the ALJ failed to evaluate the *Trimiar* factors and made no specific factual finding regarding the numerical-significance requirement, the Court cannot properly review this issue. As the Tenth Circuit has emphasized:

> *Trimiar's* insistence on an antecedent exercise of judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and . . . we are not in a position to draw factual conclusions on behalf of the ALJ.

*Allen*, 357 F.3d at 1144 (quotations omitted). Here, the number at issue, 12,900, is very low and cannot per se support a finding of significance. If the number were much higher, as in *Raymond* (1.34 million) for example, the number alone could suffice. But here, because the number is so low, some other analysis is necessary to support a finding of "significant." But there is no other analysis. There is no discussion or explanation of how the ALJ determined that such a low number was "significant." The only evidence in the record that could support the finding of significance is the VE's testimony of 12,900. Considering how low the number is, that testimony alone is not substantial evidence to support the finding of significant. Moreover, the only other relevant evidence on the issue appears to be the VE's opinion that such number is "very low." The ALJ's

finding at step five of "significant" national numbers, therefore, is not supported by substantial evidence and cannot be affirmed. *See Rhodes v. Barnhart*, 117 F. App'x 622, 631–32 (10th Cir. 2004) (reversing and remanding where at the administrative hearing the VE commented that the jobs numbers, which were 150 statewide and 14,000 nationally, were "not in significant numbers" in the state of Oklahoma and the ALJ commented that the numbers "may not be" significant, but the ALJ nevertheless found the numbers significant in his decision with no application of the *Trimiar* factors and no "specific factual findings regarding the numerical-significance requirement").

Defendant essentially makes three arguments, none of which is persuasive.[6] First, Defendant argues that because only national numbers are relevant to this case, *Trimiar* does not apply. [Doc. 29] at 9–10 (citing *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009)). To the extent that Defendant argues that national numbers are beyond review, the Court disagrees.[7]

In *Raymond*, the Tenth Circuit explained that *Trimiar* placed no special significance on regional numbers to the exclusion of national numbers. 621 F.3d 1274 n.2. It was mere happenstance that in *Trimiar* only regional numbers were provided by the VE and relied on by the

---

[6] Defendant begins his brief, "This Court has granted Plaintiff a remand in two previous instances for resolution of very narrow issues. The administrative law judge on remand resolved those issues in full satisfaction of this Court's remand orders, but Plaintiff has again appealed the resulting unfavorable decision, *raising entirely new arguments*." [Doc. 28] at 1 (emphasis added). The implication seems to be that Plaintiff may not, or should not, raise new arguments. Such position is firmly rejected. First, with very limited exception, there is no issue exhaustion in social security cases, and that has been the law for more than 20 years. *Sims v. Apfel*, 530 U.S. 103, 112 (2000); *Wall v. Astrue*, 561 F.3d 1048, 1073 (10th Cir. 2009); *but see Carr v. Comm'r*, 961 F.3d 1267 (10th Cir. 2020) (requiring exhaustion of a challenge based on the appointment clause). Moreover—and this is critical—Plaintiff cannot be limited to arguments raised in previous federal court briefing, because after each remand, the Commissioner issued entirely new decisions.

[7] Certainly, where only national numbers are at issue, not every factor from *Trimiar* will be relevant, such as the distance the claimant is capable of traveling. *See Trimiar*, 966 F.2d at 1330. But other factors will be relevant to national numbers, such as the reliability of the vocational expert's testimony or the isolated nature of the jobs. *See id.* Besides, the list of factors is *Trimiar* is not exclusive. *See id.* (listing the factors and ending with list with "and so on.").

ALJ. *Raymond* does not support Defendant's position that *Trimiar* is inapplicable to cases involving only national numbers. Such cases are subject to *Trimiar*, and substantial evidence must support an ALJ's finding that national numbers are "significant." Indeed, as recently as this month, the Tenth Circuit has applied *Trimiar* to a case involving only national numbers. *Kimes v. Comm'r*, 2020 U.S. App. LEXIS 21193, at *10 (10th Cir. July 6, 2020). *Trimiar* applies to cases like this one where only national numbers are at issue.

Second, Defendant challenges the cases cited by Plaintiff on the ground that they are harmless-error cases rather than substantial-evidence cases. [Doc. 28] at 10. The Court appreciates the analytical distinction between the harmless-error cases and this, a substantial-evidence case, but it is not as meaningful as Defendant argues. True, in the harmless-error cases, there has been no administrative finding that the job numbers at issue are "significant." Thus, in the harmless-error context, the reviewing court would be deciding in the first instance whether the job numbers at issue are, affirmatively, either significant or not significant. Whereas in a substantial-evidence case, the reviewing court must decide whether the correct legal standards were applied, and if so, whether the ALJ's finding of "significant" is supported by substantial evidence. Under the circumstances here, however, that distinction only supports Plaintiff's position. That distinction shows that the ALJ's finding of "significant" (when the number is low) must be based on something more than a mere number. If nothing more than evidence of a number were required, there would be no need to remand in the harmless-error context. The circuit court would give us a bright-line rule. The purpose of the remand in the harmless-error cases is not for the ALJ to mechanically say the word "significant." The purpose for the remand is for the ALJ to weigh the "many fact-specific considerations requiring

individualized evaluation" in determining numerical significance. *Allen*, 357 F.3d at 1144. Here, there is no analysis of any kind explaining how the ALJ determined that 12,900 was significant. Moreover, the evidence from the VE—beyond the testimony of the numbers—is that she assessed the numbers as "very low." Under these circumstances, there simply is not substantial evidence to support the ALJ's finding of "significant."

Finally, Defendant argues that the ALJ's finding is "reasonable" and must be affirmed because other courts have found similar numbers to be significant. [Doc. 28] at 11 (*citing Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (suggesting that 11,000 jobs in the national economy was substantial evidence to support a determination of nondisability) and *citing Garcia v. Berryhill*, No. 16-cv-1266 SCY (D.N.M. Mar. 31, 2018) (unpublished) (finding that 17,600 jobs in the national economy were "significant"). The Court is not persuaded. In *Rogers*, the question of whether the jobs met the numerical-significance requirement was not at issue. There is no indication that it was argued. The Tenth Circuit's opinion did not cite to *Trimiar* or *Allen*. (*Raymond* would not be decided for another ten months.) And the court discussed none of the principles related to whether a number qualifies as "significant." Additionally, *Rogers* is not published, does not bind the decision in this case, and cannot carry more weight than the published authorities.

In *Garcia v. Berryhill*, United States Magistrate Judge Steven C. Yarbrough rejected a challenge to the ALJ's finding of significant numbers at step five. No. 16-cv-1266 SYC (D.N.M. Mar. 31, 2018) (unpublished). At issue in *Garcia* was the ALJ's finding that 17,600 jobs in the national economy was significant. Importantly, the plaintiff had not challenged the national numbers. Instead, the plaintiff had divided the national numbers to arrive at his own estimate of

what the regional numbers likely were and then challenged those speculative numbers. *Id.* at 7–8. As is also relevant, Judge Yarbrough clarified that national numbers at step five are not beyond scrutiny and that *Trimiar* may be relevant—but the plaintiff had not made any challenge to the national numbers, and so he affirmed. *Id.* at 9. These cases[8] do not persuade the Court that it was reasonable to find that 12,900 jobs nationally were "significant" with no further analysis and where only other evidence was that such number is "very low."

### The case will be remanded for an immediate award of benefits.

District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'" *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation omitted) (quoting *Harris v. Sec'y of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir. 1987) (remanding for an immediate award of benefits where, *inter alia*, the application had been pending for more than five years)). When the Commissioner has failed to satisfy his burden of proof at step five, and when there has been a long delay as a result of his erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[] and the long delay [of at least four years] that has already occurred as a result of the Secretary's

---

[8] Defendant also cited to *Jones v. Colvin*, No. 14-cv-0170 RAW/KEW, 2015 U.S. Dist. LEXIS 127635 (E.D. Okla. Sept. 10, 2015) (unpublished). [Doc. 28] at 11. There, the district court remanded on other grounds. The case is unpublished, and its persuasive value is limited in comparison to what is detailed in this opinion.

erroneous disposition of the proceedings"). The Commissioner "is not entitled to adjudicate a case *ad infinitum* until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

Among other authorities in support of an immediate award of benefits, Plaintiff cites *Ragland*, 992 F.2d at 1060. [Doc. 24] at 22. In that case, the ALJ had relied on a grid rule to find the plaintiff not disabled at step five. The circuit court found reversible error because the ALJ ignored medical evidence showing that the plaintiff could not sit for any prolonged period, and because the ALJ had improperly weighed the plaintiff's testimony about her ability to lift and about her pain. *Ragland*, 992 F.2d at 1059–60. These limitations (in sitting, lifting, and resulting from pain) precluded exclusive reliance on the grid rule. These limitations would have necessitated testimony from a VE to support the step-five denial of benefits. However, the ALJ had not solicited testimony from a VE. *Id.* at 1056. Ultimately, the court declined to permit the Commissioner another opportunity to gather the evidence from a VE to support his step-five denial. *Id.* Based on the long delay and the fact that the delay was attributable to the Commissioner's erroneous disposition of the proceedings, the court remanded for an immediate award of benefits. *Id.*

Here, Plaintiff argues that her claim has been pending for more than eight years. [Doc. 24] at 22. This is her third appeal to federal court, and she has met her burden to show disability at the first four steps of the SEP all three times. *Id.* at 23. Further, she argues that this appeal concerns a closed period of time (August 30, 2011 through January 1, 2016) for which the medical evidence

is complete. *Id.*; [Doc. 29] at 10.  Defendant does not disagree.  *See* [Doc. 28].  He makes no argument on the issue at all.  *See id.*

Plaintiff's arguments are persuasive.  She has met her burden (again).  The Court declines to remand to give Defendant a fourth opportunity to meet his burden.  This case has been pending for more than eight years, and the Court sees no useful purpose in further fact-finding.  As in *Ragland*, the Court will exercise its discretion and remand for an immediate award of benefits.

## Conclusion

The ALJ's finding at step five is not supported by substantial evidence.  It is not necessary to pass on Plaintiff's other allegations of error because an immediate award of benefits is warranted.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for an Immediate Award of Benefits or a Rehearing with Supporting Memorandum [Doc. 24] be **GRANTED**.  The Commissioner's final decision is reversed, and this case is remanded for an immediate award of benefits.  *See* § 405(g).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**